IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| KEITH EDWARD NUNLEY, # 587076, | * |
| | * |
| Plaintiff | * |
| | * |
| v. | *   Civil No. 3:04-CV-2515-H |
| | * |
| DR. PAUL MILLS, | * |
| | * |
| Defendant. | * |

**MEMORANDUM ORDER AND OPINION**

Before the Court are Defendant's Motion for Summary Judgment, and supporting brief and appendix, filed August 22, 2005; and Plaintiff's Motion to Oppose Summary Judgment, and supporting brief, filed September 2, 2005. For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

I.  BACKGROUND

On November 22, 2004, Plaintiff Keith Edward Nunley, a prisoner in the Texas Department of Criminal Justice system, filed a *pro se* Complaint alleging violation of his rights under the First and Eighth Amendments to the Constitution of the United States. *See* 42 U.S.C. § 1983 ["Section 1983"]. On March 14, 2005, Plaintiff's claim of inadequate medical care was dismissed from this lawsuit. *See* 28 U.S.C. § 1915A. His sole remaining claim is for retaliation in violation of Section 1983. Specifically, Plaintiff claims that Defendant Dr. Paul Mills, a doctor at Hutchins State Jail where Plaintiff was incarcerated, retaliated against him after Plaintiff filed grievances with prison officials against Dr. Mills for providing inadequate medical care. In the motion before the Court,

Defendant asserts that he is entitled to qualified immunity and to sovereign immunity as complete defenses. For the reasons that follow, the Court agrees.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A party must do more than simply show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The nonmoving party must go beyond the pleadings and designate specific facts creating a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With this summary judgment standard in mind, the Court turns to an analysis of the issues in this case.

## III.  ANALYSIS

Under federal law, a prison official may not retaliate against an inmate for complaining about misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied sub nom*, *Palermo v. Woods*, 516 U.S. 1084 (1996); *Jackson v. Cain*, 864 F.2d 1235, 1248 (5th Cir. 1989). Because the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties, however, claims of retaliation must be regarded with particular care. *Woods v. Smith*, 60 F.3d at 1166. To state a valid claim for retaliation under Section 1983, a prisoner must allege the following elements: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his exercise of that right; (3) a retaliatory

2

adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999). Causation requires a showing that "but for" the retaliatory motive, the action complained of would not have occurred. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).

Defendant in this case has asserted that even if Plaintiff has made out a *prima facie* case of retaliation, Defendant is entitled to the defense of qualified immunity. Qualified immunity shields state officials from personal suits "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Federal courts review claims of qualified immunity under a two-step analysis. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). First, a court must determine whether, taken in the light most favorable to the party asserting the injury, the alleged facts show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. at 201. If the allegations do not establish the violation of a constitutional right, the officer is entitled to qualified immunity. *Id.* If the allegations make out a constitutional violation, the court must ask whether the right was clearly established -- that is, whether it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*; *see Wilson v. Layne*, 526 U.S. 603, 614 (1999) ("Whether an official protected by qualified immunity may be held personally liable for an official action generally turns on the objective legal reasonableness of the action . . . .") (internal quotation marks and citations omitted).

To prevail on a Section 1983 claim, a prisoner must establish more than his own personal belief that he has been the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d at 310. Mere conclusory allegations will not suffice. *Id.* Instead, the inmate must produce direct evidence of

retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. *Woods v. Smith*, 60 F.3d at 1166.

In this case, there is no direct evidence of retaliation. Instead, Plaintiff has produced a detailed chronology of events, supported by voluminous medical records. In reaching its holding, the Court has reviewed all of those documents. What the record shows clearly is that (1) Defendant's medical conduct was objectively reasonable throughout; and (2) the sole evidence of retaliation is Plaintiff's subjective belief that it occurred. Under the analysis of each factual basis below, both prongs of the qualified immunity standard therefore support summary judgment. *See Saucier v. Katz*, 533 U.S. at 201; *Johnson v. Rodriguez*, 110 F.3d at 310.

### A. Qualified Immunity & Plaintiff's Retaliation Claim

From October 19, 2003, to May 7, 2004, Plaintiff filed four grievances against Defendant Dr. Mills for inadequate medical care. Plaintiff alleges that Dr. Mills unlawfully retaliated against this exercise of his First Amendment rights by taking the following actions: (1) failing to prescribe proper medications and appliances;[1] (2) postponing treatment by cancelling an appointment; (3) assigning Plaintiff to an upper bunk; and (4) preventing Plaintiff from seeing other physicians for his complaints. The Court addresses each allegation in turn.[2]

#### 1. Failure to Prescribe

Plaintiff alleges that Defendant retaliated against him by failing to prescribe certain medications for his foot rash, hemorrhoids, sinus condition, and various other ailments. Defendant

---

[1] Because only retaliatory conduct is at issue, the Court does not consider any incidents prior to the time the first grievance was filed on October 19, 2003.

[2] Plaintiff alleges a variety of other acts as additional grounds for his Section 1983 cause of action. Those not expressly addressed herein, including Plaintiff's complaint that Defendant was "sarcastic," are summarily dismissed.

provides expert medical testimony that the medical care provided -- though different from what Plaintiff demanded -- was "thorough, responsible and appropriate."  Aff. of Dr. Steven Bowers[3] ["Bowers Aff."].  Without venturing into an analysis whether creams or suppositories are superior treatment for hemorrhoids, the Court finds only that the record as a whole shows conclusively that Defendant prescribed Plaintiff regular and appropriate medications to treat his documented ailments.  *See id.* (discussing and comparing the medications requested by Plaintiff with those prescribed by Defendant); *see also Nunley v. Mills*, Civ. No. 3:04-CV-2515-H, Order at 1 (dismissing Plaintiff's claims of gross medical indifference as frivolous).

Plaintiff also complains that Defendant deprived him of appropriate "appliances," such as a cane or crutches, to address his knee and back problems, which were exacerbated by a fall from his bunk on January 12, 2004.  Plaintiff establishes that another physician, whom Plaintiff saw after filing grievances against Defendant, prescribed him crutches, which Defendant ordered removed three weeks later.  Plaintiff alleges that before he arrived at the Hutchins State Jail, he had undergone surgery on his back and knee.  Defendant responds that there is no record of the surgery or surgeries, at the Veteran's Administration or otherwise; that no surgical scar was observed; and that the only evidence of surgery is Plaintiff's own verbal history reported to various examining physicians over the course of his treatments.

Assuming for purposes of this motion that Plaintiff had the surgeries as he claims, the record as a whole supports the reasonableness of Defendant's actions in declining to prescribe crutches or other appliances before his fall, and in weaning him off of them afterwards.  On Plaintiff's arrival

---

[3] At the time of the Affidavit Dr. Steen Bowers was Medical Director for teh Dallas West Cluster of the University of Texas Medical Branch Correctoinal Managed Care.  Bowers. Aff. at App. 023.

at Hutchins, his routine back x-ray of February 11, 2003, was normal. *See* Bowers Aff. He was independently observed to be normally ambulatory without assistance.[4] Medical records of physical exams prior to his fall show no problem that would require prescription of a walking appliance. Furthermore, uncontroverted medical evidence shows that weaning him off crutches after three weeks' use following his fall was a medically justifiable act to avoid a "frozen knee joint" and wheelchair dependence. Bowers Aff (concurring in the removal of crutches). Moreover, as Dr. Bowers testifies: "In the correctional setting, it is not unusual for offenders to try to get assisting devices, such as canes or crutches, so that they can obtain other benefits, such as 'low bunk' assignments or increased medication." Bowers Aff. at App. 026. Under all the circumstance, the Court finds that the treatment Plaintiff received was objectively reasonable under the circumstances known to Defendant at the time.

    2.    Cancellation of Appointment

After Plaintiff filed his initial grievance on October 19, 2003, for Defendant's failure to prescribe medications, Dr. Mills scheduled him for an appointment for November 6, 2003. Plaintiff claims that this appointment was cancelled in retaliation for filing the grievance. The appointment was, however, rescheduled for November 14, 2003, only eight days later. Defendant argues that in the prison *triage*-like scheduling environment necessary to accommodate emergencies and overbooking, Plaintiff's "common complaints of minor orthopedic aches, sinus problems and hemorrhoids were the type of chronic ailment which could be rescheduled for evaluation at a later

---

[4] Although Plaintiff insisted on being taken to the medical center in a wheelchair once, uncontroverted evidence shows that on departing he abandoned the wheelchair and walked the remainder of the way back to his housing unit. *See* Bowers Aff.

date with little risk to the patient." Bowers Aff. In light of the immediate rescheduling, Defendant's conduct is found to be objectively reasonable with regard to this allegation as well.

### 3. Assignment to Upper Bunk

Plaintiff's third complaint is that in retaliation for his October 2003 grievance, and after a contentious appointment with Defendant on November 14, 2003, Defendant reassigned Plaintiff on November 17, 2003, from a lower bunk to an upper bunk. It is undisputed that from January 2003 until his January 2004 fall from that bunk, Plaintiff was not on any "low bunk" or "low row" restriction.[5] *See* Affidavit of Assistant Warden Michael Searcy ["Searcy Aff."]; Bowers Aff. ("Plaintiff may have had a lower bunk . . . but it was not required by his medical condition."). The Court is of the view that for a prisoner not on a "low bunk" medical restriction, assignment to an upper bunk does not constitute an adverse act sufficient to sustain a *prima facie* case of retaliation. *Cf. Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) (noting that other circuits impose a *de minimis* standard); *Thaddeus-X v. Blatter,* 175 F.3d 378, 396 (6th Cir. 1999) ("It is not necessarily true . . . that every action, no matter how small, is constitutionally cognizable."); *cf. also Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a *de minimis* level of imposition with which the Constitution is not concerned.").

Even if such reassignment can be considered an adverse act rising to Constitutional importance, however, Plaintiff's claim fails for causation. Defendant offers evidence that bunk assignment changes are not uncommon in response to changing prison population circumstances. *See* Searcy Aff. Plaintiff's bunk assignment had indeed been changed in the past -- from a lower bunk to a top bunk in June 2003, and back to the lower bunk thereafter. *Id.* Plaintiff offers no proof

---

[5] Under the Court's prior reasoning, Defendant would be qualifiedly immune for any failure to make such a "low bunk" assignment.

connecting Defendant Dr. Mills to the November 2003 decision, which Assistant Warden Searcy testifies was made solely by security staff. *See id*. It is true that the temporal proximity of the transfer to the grievance (29 days) might be considered suggestive. Moreover, it would be disingenuous to assume that a prison medical officer could not ask or influence security staff to make the reassignment. To prevail, however, Plaintiff must come forward with evidence tending to show that "but for" his filing a grievance, the reassignment would not have happened. *See Johnson v. Rodriguez*, 110 F.3d at 310. The record shows instead the undisputed facts that Plaintiff could have been reassigned to an upper bunk at any time for any reason in the normal course of prison operations; and that he was reassigned by someone other than Defendant. Accordingly, Plaintiff cannot prevail on this claim. *See id.* (holding that Plaintiff's subjective belief of retaliation is not enough to support a Section 1983 claim).

4.  Preventing Treatment by Other Physicians

Finally, Plaintiff argues that Defendant retaliated against him by preventing him from seeing other doctors, who might have treated him differently. The record shows that as Medical Director, Defendant did indeed place a restriction on Plaintiff's chart in April 2004 prohibiting treatment by any other physician, except in an emergency. Moreover, the record shows that before that restriction was placed, Plaintiff saw other medical staff who prescribed more and differently for him than Defendant did. In response, Defendant offers the following expert medical testimony:

> It is clear from a review of the voluminous medical records, that Mr. Nunley was a regular and aggressive consumer of medical services at the facility. Although he brought frequent complaints . . . these were of a relatively minor nature. He often demanded not only medication for his various symptoms, but specific medication which he believed he needed. He would also "forum shop," trying to find a more sympathetic provider to give him the medications or restrictions he wanted. It appears that Dr. Mills in April 2004 was trying to ensure

>    a more consistent treatment plan for Plaintiff . . .. I believe that this
>    was reasonable. It ensured that Plaintiff would be seen by anyone in
>    case of a real emergency but would limit his ability to manipulate the
>    medical staff addressing his routine complaints.

Bowers Aff. at App 026. Viewing the record in its totality, the Court finds that Defendant's actions and explanation are objectively, indeed eminently, reasonable. As supported by the medical record, it would not have been "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 201. Qualified immunity is therefore warranted.

    **B.**    **Sovereign Immunity**

It appears that this case was brought against Defendant solely as an individual. To the extent, however, that Plaintiff's claims are directed against Defendant in his "official capacity" as an officer of the state, the claims are barred by sovereign immunity under the Eleventh Amendment. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

## IV. CONCLUSION

For the reasons given above, Defendant is entitled to qualified immunity and sovereign immunity for all of Plaintiff's claims. Defendant's motion for summary judgment is therefore **GRANTED**. All other motions filed in this case are rendered **MOOT**. A Final Judgment will issue by separate order.

    SO ORDERED.

    DATED: November 29, 2005.

                                            BAREFOOT SANDERS, SENIOR JUDGE
                                            UNITED STATES DISTRICT COURT
                                            NORTHERN DISTRICT OF TEXAS